1
2
3
4
5
6
7
8
9
10
11
12
13
14

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOE SMITH; LIONEL RISIGLIONE, and
BRENDA BRIDGEFORTH,

       Plaintiffs,

v.

NEVADA POWER COMPANY,

       Defendant.

2:06-cv-0998-LDG-LRL

**ORDER**

15      In her complaint, plaintiff Brenda Bridgeforth alleges race discrimination, racial
16 harassment, retaliation, infliction of emotional distress, and wrongful termination against defendant
17 Nevada Power Company (#67).  Nevada Power has filed a motion for summary judgment (#76,
18 opposition #84, reply #90).
19      Summary Judgment is appropriate under the Federal Rule of Civil Procedure 56c when "the
20 pleadings, depositions, answers to interrogatories, and admissions on file, together with the
21 affidavits, if any, show that there is no genuine issue as to any material fact and that the moving
22 party is entitled to a judgment as a matter of law." The moving party must present "an absence of
23 evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325
24 (1986). This evidence must be viewed in the light most favorable to the non-moving party.  Oliver
25 v. Keller, 289 F.3d 623 (9th Cir. 2002).
26

The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but...must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e), Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). At that point, the non-moving party must come forward with specific facts showing that there are genuine issues for trial, and not rest on mere allegations or denials. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 256 (1986).

If the evidence presented in opposition to summary judgment is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249-50. And, if the record, as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. at 587.

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin. 42 U.S.C. 2000(a)(1). Thus, when someone is treated less favorably than others due to their race, it is a violation of federal law. See International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335, (1977).

The plaintiff's prima facie case requires a showing that "give[s] rise to unlawful discrimination," and an employee alleging race discrimination bears the burden of persuasion at all times as to all issues. Texas Dept of Comm. Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 1091 (1982). Furthermore, there must be proof of the employer's intent to discriminate. Forsberg v. Northwest Bell, 840 F.2d, 1409, 1418 (9th Cir. 1988).

The plaintiff may establish a prima facie case by presenting direct evidence of discriminatory intent. Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir.1998). Alternatively, a prima facie case can be established circumstantially by showing that (1) plaintiff is a member of a protected class; (2) plaintiff applied and was qualified for a job for which the

2

employer was seeking applicants; (3) plaintiff was rejected despite being qualified; and (4) the position remained open and the employer continued seeking applicants with plaintiff's qualifications after plaintiff was rejected.  McDonnell Douglas Corp. v. Green,  411 U.S. 792, 802, 93 S.Ct. 1817, 35 L. Ed. 2d 668 (1973).  The degree of proof necessary to establish a prima facie case for Title VII purposes is minimal and does not need to rise to the level of a preponderance of the evidence.  Wallis v. J.R. Simplot Co., 26 F.3d, 885,889 (9th Cir. 1994).

Under the three-step analysis in McDonnell Douglas, if an employee succeeds in establishing a prima facie case for discrimination under Title VII, the burden of proof then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action; if the employer does so, the burden of production then lies with the plaintiff.  McDonnell Douglas Corp. v. Green, 411 U.S. at 792.  The final step of the analysis requires the plaintiff to show that the articulated reason is a pretext for unlawful discrimination by either directly persuading the court that the explanation was a pretext, and a discriminatory reason more likely motivated the employer, or by showing that the proffered explanation is unworthy of credence.  Id.

However, evidence to show pretext must be both specific and substantial in order to overcome the articulated legitimate reasons put forth by the employer.  Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018 (9th Cir. 2006).  Regardless of who bears the burden of production, the employee  always retains the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee. Texas Dept. Of Comm. Affairs v. Burdine, 450 U.S. at 253.

Plaintiff was employed by Nevada Power in 1979, and after initial office positions, she became a meter reader working in the field.  In February 2005, two material specialist positions opened up.  Plaintiff was not selected for either position.  However, plaintiff has not raised an issue of fact that she was qualified for the position at the time, or that Nevada Power's reason for not giving plaintiff the position was a pretext for discrimination.

3

1    The job duties of the position of material specialist included manual and clerical duties in

2  the warehouse, operating loading machinery and supervision of scrap metal in the yard.  A material

3  specialist was required to have experience in the ERP/PeopleSoft computer system used in the

4  warehouse, and computer training, supply chain experience and knowledge of warehouse materials.

5  Plaintiff and 28 other applicants were not selected to interview for the first material specialist

6  opening; six applicants were interviewed.

7    During her deposition, plaintiff did not remember if she had forklift experience before she

8  applied for the positions, and admitted that she had previously only worked in a smaller-scale

9  warehouse.  While plaintiff began observing others working as material specialists for a short

10  period during the selection process for the positions, she was not actually "cross-training" as a

11  material specialist.  According to the unrebutted affidavit of Khalil Risheg, plaintiff had

12  insufficient computer knowledge and training, no supply chain experience, and no knowledge of

13  the material in the warehouse.  In addition, Nevada Power has shown that each of the six

14  individuals who were interviewed had forklift or previous warehouse experience, and significant

15  computer experience.  Of the two individuals selected for the position, one (a Hispanic male) had

16  experience performing the duties of a material specialist, and the other (a Caucasian male) had

17  forklift experience and company certification, computer knowledge and previous warehouse

18  experience.

19    As for plaintiff's application for the July 2005 opening for material specialist, she was one

20  of six of twenty-two applicants interviewed for the job.  By that point, plaintiff had gained  forklift,

21  computer, supply chain and materials experience.  During the interview, all candidates were scored

22  on problem-solving skills, and answered questions that involved critical thinking and ethics.  A

23  union steward was present during the interview process.  After the interview, Nevada Power

24  selected Lisa Toltzman, a Caucasian female, for the position, because she was determined to have

25  previous warehouse experience, forklift experience, a college degree, and a familiarity with the

26

4

1    computer system to a greater degree than the other candidates.  In fact, Toltzman had helped train

2    other employees to use ERP/PeopleSoft during the system upgrade.  In fact, plaintiff, who was not

3    aware of Toltzman's qualifications, admitted in her deposition that an individual with the

4    qualifications of Toltzman would be a better candidate than plaintiff.

5          Plaintiff has not identified any evidence to suggest that Nevada Power's decision not to

6    promote her in 2005 was based on plaintiff's race.  Rather, plaintiff relies on her own affidavit, and

7    the written statements of co-workers during the Nevada Equal Rights Commission's investigation

8    of her charge of discrimination.  These do not meet plaintiff's burden to raise an issue of fact.  The

9    written statements generally vouch for plaintiff's interest in and training for the positions, but do

10   not raise an issue of fact regarding whether Nevada Power's business reason for selecting more

11   qualified applicants for the job was a pretext for discrimination.

12         Plaintiff's affidavit asserts that the person chosen for the July 2005 opening was "[a] less

13   senior Caucasian female with less experience."  However, plaintiff fails to include any reference to

14   detailed facts supporting the claim.  In any event, plaintiff conceded in her deposition that

15   qualifications such as Toltzman's would make her a better candidate than plaintiff for the position.

16   "[M]ere comparisons of qualifications are insufficient to show pretext," for the purposes of

17   surviving summary judgment.  Odima v. Westin Tucson Hotel Co., 991 F.2d 595, 602 (9th Cir.

18   1993).  Plaintiff also states that she "believes" that she was not chosen for the position because of

19   her race.  Plaintiff's subjective beliefs, without evidence to support her claims, is insufficient.  In

20   that regard, plaintiff testified at deposition that she did not have any evidence whatsoever that

21   Nevada Power discriminated against her because of her race, and plaintiff has not shown why such

22   responses should not be taken at face value.

23         In response to Nevada Power's motion for summary judgment as to plaintiff's harassment

24   claim, plaintiff responds in conclusory fashion that Nevada Power purposefully ignored her

25   applications on the basis of her race,  Such an assertion does not meet the requirement of a showing

26

5

that the workplace was "one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864, 871-72 (9th Cir. 2001).

Plaintiff has not shown a genuine issue of material fact with respect to her retaliation and emotional distress claims. She merely requests to be permitted to proceed to trial because Nevada Power has failed to offer a legitimate business reason for taking the action that it took, or to allow a jury to determine whether Nevada Power acted inappropriately. Plaintiff does not even address her cause of action that Nevada Power retaliated against her because she opposed its discriminatory practices, or point to anything indicating that she actually suffered severe emotional distress. Accordingly, Nevada Power is entitled to summary judgment.

THE COURT HEREBY ORDERS that Nevada Power Company's motion for summary judgment (#76) is GRANTED.

DATED this 18 day of March, 2009.

_____
Lloyd D. George
United States District Judge

6